UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 11-40111-01-KES |
| | ) | |
| *Plaintiff* | ) | |
| | ) | **DEFENDANT'S APPEAL OF** |
| v. | ) | **DETENTION ORDER** |
| | ) | |
| RONALD GOLDBERG, | ) | |
| | ) | |
| *Defendant* | ) | |

Defendant Ronald Goldberg has been detained at the Minnehaha County Jail since he was arrested on March 4, 2012. During the past seven and a half months, Mr. Goldberg has not had a moment of fresh air or outdoor exercise, has subsisted on a diet of starch and sugar that has caused or exacerbated serious health problems, and has been denied the ability to assist in any meaningful way in his own defense. With Mr. Goldberg incarcerated, the government continued to investigate him and has twice returned superseding indictments. Mr. Goldberg now stands accused of thirteen fraud counts, which, in total, allege that he defrauded his victims of approximately $83,000. Although Mr. Goldberg has an extensive criminal history, he has no history of violence, no chemical dependency, no ties overseas, and no passport or other plausible means to flee.

Mr. Goldberg hereby appeals from the Order of Detention entered by Magistrate Judge Duffy on March 8, 2012 [Docket #18], as well as her subsequent denial of defendant's motion for reconsideration of that Order on April 27, 2012 [Docket #35].[1] Mr. Goldberg appeals at this time because he has retained trial counsel and needs to be available to assist in his own defense

---

[1] In accordance with D.S.D. Crim. LR 5.1(B), transcripts were ordered of the bond hearings that occurred on March 8 and April 27, 2012. [Docket #54 and #56].

and because he is able to post sufficient bond and satisfy sufficient conditions to reasonably assure both his presence at trial and the safety of the community.

I.      **Legal Standards**

Pursuant to 18 U.S.C. § 3142(e), a defendant may be detained prior to trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance . . . ." *United States v. Orta,* 760 F.2d 887, 891 (8th Cir. 1985) (en banc) (emphasis orig.)); *see also United States v. Ashworth,* Case No. 4:09CR032RWS, 2009 WL 482477, at *2 (E.D. Mo. Feb. 25, 2009). "The legal standard required by the Act is one of reasonable assurances, not absolute guarantees." *Orta,* 760 F.2d at 888, n.4. "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* at 891.

A defendant may appeal a magistrate judge's order of detention to the presiding district judge. 18 U.S.C. § 3145(b); D.S.D. Crim. LR 5.1(A). When considering an appeal of a magistrate judge's pretrial detention order, a district court reviews the detention order de novo, making the same inquiry as to the defendant's risk of flight and danger to the community as the magistrate judge. *United States v. Maull*, 773 F.2d 1479, 1481-82 (8th Cir. 1985) (en banc); *see also United States v. Adams*, 794 F. Supp. 2d 989, 990 (S.D. Iowa 2011); *United States v. Agriprocessors, Inc.*, No. 08-CR-1324-LRR, 2009 WL 290473, at *4 (N.D. Iowa Jan. 28, 2009). A district court must make its own determination of the facts without any deference to the magistrate judge's findings. *Maull*, 773 F.2d at 1482 ("To engage in a meaningful de novo review, the district court must have available the options open to the magistrate.");

*Agriprocessors*, 2009 WL 290473, at *4-5.  In its discretion, a district court may rely on the factual and evidentiary record developed during the hearing before the magistrate judge or conduct its own evidentiary hearing.  *Id.*

18 U.S.C § 3142 sets forth the progression of determinations the Court must make in determining whether any combination of conditions short of detention can reasonably assure defendant's appearance and the safety of others.  First, the Court must determine whether release on personal recognizance or an unsecured bond will suffice.  If not, the Court must proceed to consider the conditions listed in 18 U.S.C. § 3142(c)(2)(A)-(N).  *Maull,* 773 F.2d at 1482.  In making its determination, the Court should consider (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor, a controlled substance, or a firearm or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of any danger that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *Agriprocessors,* 2009 WL 290473, at *6.

## II. Sufficient Conditions Exist To Reasonably Assure Defendant's Presence and the Safety of Others

The evidence presented by the government to the Magistrate Judge failed to establish that no set of conditions could reasonably assure Mr. Goldberg's presence at trial and the safety of the community.  The nature and circumstances of the charged offenses – financial frauds totaling $83,000 – would normally suggest an unsecured recognizance bond, even were the evidence of Mr. Goldberg's guilt overwhelming, which it is not in this case.  Because Mr. Goldberg is not a violent person, and is not involved in terrorism, guns, drugs, or any conduct that would suggest violence, any danger posed by his release is minimal and limited to financial frauds.  The first, second, and fourth factors of 18 U.S.C. § 3142(g) thus strongly favor Mr. Goldberg's release.

Any basis for detaining Mr. Goldberg must therefore be found in his personal history and characteristics. Mr. Goldberg will not attempt to sugar-coat his criminal history: he has a lengthy record and has served lengthy sentences, he was found to have violated the conditions of supervised release, he once attempted to escape from jail, he is accused of engaging in fraudulent financial transactions by phone even after his arrest in this case, and he was recorded having conversations that the government contends were intended to influence the testimony of his estranged wife and a business colleague so as to improve his chances of being released on bond. In short, there is ample basis for the Magistrate Judge's conclusion that "[w]hat Mr. Goldberg says and represents can't be trusted." (4/27/12 transcript Docket #56, p. 6.)

While that conclusion may warrant the Court not trusting Mr. Goldberg's own recognizance, Mr. Goldberg is not asking for an O.R. bond. Indeed, Mr. Goldberg is not asking the Court to release him based on anything he promises or represents. Rather, Mr. Goldberg is proposing that he be released subject to a stringent set of conditions easily enforced by federal officials that will reasonably assure his presence at trial and preclude him from committing any further crimes while he prepares for trial.

Specifically, Mr. Goldberg proposes that he be released subject to the following set of conditions to be imposed in addition to all of the standard conditions of pretrial release:

    1)    Mr. Goldberg shall be restricted to his home at all times, subject to electronic monitoring.[2]

    2)    Only one landline telephone shall be kept in Mr. Goldberg's house. Mr. Goldberg will use that phone to check in with Pretrial Services as many

---

[2] Mr. Goldberg formerly lived in a home in Sioux Falls with his wife and son, but the lease on that home expired in July 2011. Mr. Goldberg, who is now estranged from his wife, currently resides in Arnold's Park, Iowa, approximately 90 miles from Sioux Falls. Mr. Goldberg also has rented a house in Sioux Falls which is available for him to live in should the Court release him and wish him to remain in the district.

4

|     | times per day as the Court shall direct.  Mr. Goldberg will be allowed to use that phone only to communicate with his attorneys, medical professionals, family members, business associates, and food vendors.  Further, Mr. Goldberg shall provide Pretrial Services and his attorneys with the log-in information to the phone account and otherwise ensure that both Pretrial Services and his attorneys have full access via the internet to a list of calls made and received by Mr. Goldberg. |

3) Mr. Goldberg shall be allowed to leave his residence only for Court appearances and medical appointments.  Mr. Goldberg shall not leave his residence without the prior approval of Pretrial Services, and Pretrial Services may elect to accompany Mr. Goldberg to any medical appointment or require that Mr. Goldberg be accompanied by one of his attorneys, a member of their staff, or another individual approved by Pretrial Services.

4) No visitors shall be allowed into Mr. Goldberg's house other than his attorneys, paralegals and other professionals employed by his attorneys, and members of his immediate family.  Mr. Goldberg shall immediately report all visitors to Pretrial Services.

5) No motor vehicle, bicycle, or other means of transportation shall be kept on Mr. Goldberg's premises, nor shall Mr. Goldberg possess keys or other means to access any vehicle located elsewhere.

6) Mr. Goldberg shall have no access to the internet.  He shall not subscribe to any internet service, and he shall possess no smart phone, wireless hotspot, or other means of accessing the internet wirelessly.  Mr. Goldberg may keep one computer in his home to use to assist in his defense, provided that computer lacks the capability to access the internet.

7) Mr. Goldberg shall possess no credit cards or checks and shall conduct no financial transactions while on release.  Prior to his release, Mr. Goldberg will, to the extent feasible, prepay his living expenses, phone service, and the costs of electronic monitoring through December 31, 2012, a date well after the anticipated conclusion of his trial.  All other financial transactions shall be conducted through Mr. Goldberg's attorneys, who shall maintain a record of all transactions and provide that record to Pretrial Services upon request.  Mr. Goldberg's attorneys may provide Mr. Goldberg with cash in petty amounts, not to exceed $200.00, to pay for the delivery of food and other basic necessities.

8) Mr. Goldberg shall consent in writing, in advance of his release, to random unannounced searches of his home and person by any government agent for so long as he remains on pretrial release.

> 9) Mr. Goldberg shall post a $15,000 cash bond and a $100,000 surety bond to secure his release, a total amount well in excess of the purported loss caused by Mr. Goldberg's alleged frauds.

The set of conditions proposed by Mr. Goldberg are stringent and specifically tailored to address the concerns the government and the Court legitimately have regarding Mr. Goldberg's history and character. The government has not previously met, and will not be able to meet, its burden of proving that the set of conditions proposed by Mr. Goldberg would fail to reasonably assure his presence and prevent him from engaging in further frauds.

### A. *The Proposed Conditions Reasonably Assure Mr. Goldberg's Presence at Trial*

There is no credible evidence that Mr. Goldberg is a flight risk. He has no ties overseas, no dual citizenship, speaks no foreign language, and has no passport.[3] Mr. Goldberg's lengthy criminal history belies any intent to flee the jurisdiction of this Court. He has faced, and served, lengthy jail sentences in the past and has never failed to appear for trial and never attempted to flee the country. The government offers no reason why the present charges, and the moderate prison sentence they suggest, would cause Mr. Goldberg to flee when past charges have not.

It is clear from the recordings of calls Mr. Goldberg made from the jail that he was aware, prior to returning to Sioux Falls, that he risked arrest. Mr. Goldberg stated on recorded lines that he had a "bad feeling" and "shouldn't have went," but he nevertheless returned to Sioux Falls to visit his now estranged wife and their three-year-old son. [March 4, 2012, 15:08:44 call.]

The only evidence that Mr. Goldberg has any propensity to flee are statements made not by Mr. Goldberg but by one of his acquaintances, who told Mr. Goldberg he should "get money

---

[3]Iowa authorities obtained Mr. Goldberg's passport during a search of his residence in 2011. He has no objection to surrendering his passport to federal authorities if it can be obtained from Iowa.

6

and go to Europe." (March 6, 2012, 7:55:07 call, at 4:57 of recording.)  In context, this comment was made by Mr. Goldberg's acquaintance in response to Mr. Goldberg saying he should not have traveled to Sioux Falls.  Mr. Goldberg never expressed any desire or willingness to flee the country, nor was there any hint of a plan discussed as to how he could possibly flee.  Notably, the government did not play for the magistrate judge another call between Mr. Goldberg and the same acquaintance, in which, in response to the acquaintance's suggestion that "you gotta leave there," Mr. Goldberg stated: "No, I don't want to . . . ."  (March 4, 2012, 15:08:44 call, at 1:54 of recording.)

While the mere suggestion of flight by a third party may warrant the imposition of conditions instead of an O.R. bond, there is no evidence that the proposed conditions would fail to assure Mr. Goldberg's presence in this district.  Electronic monitoring has been relied upon to ensure the presence of defendants with far greater means and incentive to flee than Mr. Goldberg.  *E.g., United States v. Patriarca,* 776 F. Supp. 593, 605-06, 608  (D. Mass. 1991) (releasing mafia boss to a combination of conditions including home confinement with electronic monitoring, citing success of electronic monitoring in ensuring the presence of other organized crime figures, and finding electronic monitoring to be "reliable . . . in promptly detecting flight"); *Agriprocessors*, 2009 WL 290473, at *7-8 (finding that electronic monitoring, travel restrictions, and other conditions were sufficient to assure the appearance of a defendant found to have substantial ties overseas and the incentive and means to flee).

The combination of conditions proposed in addition to electronic monitoring would both further deter flight and lessen the chance that any effort to flee would be successful.  The magistrate judge's conclusion that "[i]t would be very easy for him to abscond, to go wherever he wants to go," lacks any evidentiary basis.  (4/27/12 Transcript, Docket #56, p. 7.)  The

7

Government offered no evidence as to how Mr. Goldberg, a 54-year-old overweight man with bad legs, no money, no credit card, no cell phone, no vehicle, no passport, and no ties oversees could possibly make it out of Sioux Falls, let alone escape the jurisdiction of the United States government.  Any suggestion that it would be "easy" for Mr. Goldberg to flee depends on fanciful imaginings of a James Bond-like escape.  There is no evidence whatsoever that Mr. Goldberg has ties to anyone who could – or would – spirit him away from the Court's jurisdiction were he subject to the proposed conditions.

Even were the Court to believe that Mr. Goldberg somehow *could* flee despite the proposed conditions, it should consider that he would have no motive to do so.  Mr. Goldberg is an intelligent and rational man who knows enough about the criminal justice system to calculate both that his chance of successfully fleeing prosecution is infinitesimal, and that the ultimate punishment he receives were he to violate the conditions of release would be much greater than he currently faces.  *See Patriarca,* 776 F. Supp. at 600, 606 (concluding that defendant was "capable of calculating what is in his best interest and acting accordingly" and was "sensible enough not to want to run [the] risk" of being caught and subject to a much longer sentence).

Finally, Mr. Goldberg has long-standing ties to South Dakota, the strength of which is perhaps best indicated by the fact that he returned to Sioux Falls despite believing that he risked arrest by doing so.  Mr. Goldberg married a woman who is a lifelong resident of Sioux Falls and whose entire family continues to reside in South Dakota.  Mr. Goldberg's only child, a three-year old boy, lives in Sioux Falls with his mother.  Mr. Goldberg, who is Jewish, evidenced his commitment to the community by having his son's *bris* conducted at the Mt. Zion Congregation in Sioux Falls.  Mr. Goldberg continues to support his wife and son and is now current on his child support obligations notwithstanding his incarceration.

Mr. Goldberg fully understands that he faces serious charges and a significant prison term, and he has invested heavily in his defense by retaining prominent local and out-of-town counsel.  He seeks bond solely to assist in the preparation of his defense, obtain medical treatment, and see his son.  The proposed conditions would allow him to do virtually nothing else and are more than sufficient to assure Mr. Goldberg's presence at trial.

> **B.     *The Proposed Conditions Reasonably Assure that Mr. Goldberg Will Commit No Further Frauds While on Bond***

The Magistrate Judge also detained Mr. Goldberg based on the finding that "there is substantial evidence of . . . danger to the community."  (3/8/12 Transcript, Docket #54, p. 27.) While the Magistrate Judge correctly emphasized that the only danger is a risk of financial harm, she erroneously jumped to the conclusion that detention was "our best shot at protecting the public."  (*Id.*)  The Magistrate Judge apparently never considered the effectiveness of conditions short of detention at precluding Mr. Goldberg from engaging in fraudulent financial transactions, and the government offered no evidence to suggest that the conditions proposed by Mr. Goldberg would provide inadequate protection against future fraud.  Indeed, if the government's charges are to be believed, Mr. Goldberg committed crimes after his arrest by using the phone at the jail to make unauthorized money transfers.[4]  (Counts 5-10.)  Were he released to his home subject to the conditions proposed, Mr. Goldberg would not be able to engage in any financial

---

[4]Of course, Mr. Goldberg denies the government's charges.  In considering the weight of the evidence against the defendant pursuant to 18 U.S.C. § 3142(g), the Court should consider why, if he believed the charges were unauthorized, Mr. Goldberg would attempt fraudulent transfers on a recorded line.  And, if Mr. Goldberg intended to commit fraud on a recorded line, why would he risk further criminal charges to get small amounts of money–$500–to his landlord?  (3/8/12 Transcript, Ex. A hereto, p. 13.)  The fact that Mr. Goldberg attempted to pay his landlord after his arrest is further indication that Mr. Goldberg intended to stay in the district rather than to flee.

transaction, and any phone call to an unapproved party would be immediately known to federal authorities.

The proposed conditions thus place greater restrictions on Mr. Goldberg's ability to conduct financial transactions than does incarceration because they: (a) require that all financial transactions be conducted through counsel; (b) severely limit the number of people whom Mr. Goldberg can contact;  and (c) provide his lawyers and federal agents open access to his phone records so that any improper calls can be promptly detected.  The government has fallen far short of clear and convincing proof that no set of conditions short of detention can reasonably assure the safety of the community.  Particularly given that the only form of "danger" posed by Mr. Goldberg's release is of the white-collar financial variety, the conditions proposed not only provide reasonable assurance against future fraud but also provide better deterrence against future fraud attempts than does continued incarceration.

### III.     Mr. Goldberg Needs Medical Attention

Mr. Goldberg has diabetes.  Unlike most inmates, who lose weight on a jail diet, Mr. Goldberg has gained over 40 pounds during his incarceration and now weighs 320 pounds. County medical officials have administered Metformin, a drug commonly given to diabetics to reduce the body's absorption of dietary carbohydrates.[5]  Given his diet and lack of exercise, however, medicine alone is not controlling Mr. Goldberg's diabetes.  He is exhibiting signs of diabetic neuropathy, including digestive problems, pain in his feet and legs, and difficulty walking.  His lower legs are visibly swollen and discolored from circulatory problems.

Because of his leg problems, Mr. Goldberg fell and injured his hip while incarcerated. The doctor thought the hip might be broken and ordered X-rays, the results of which were not

---

[5]Mr. Goldberg also receives simvastatin for cholesterol.

reported for three painful weeks.  While the X-rays revealed no fracture, the doctor found calcification of the arteries.  The doctor recognized that is a very painful condition but told Mr. Goldberg that there is nothing that can be done for him as long as he remains incarcerated.  Were he not incarcerated, surgery and/or sclerotherapy would be considered to remedy his circulatory problems, and his diabetes would be actively controlled through diet, exercise, and medication.

Mr. Goldberg also has a hernia for which surgery will eventually be required.

Mr. Goldberg is not currently making a constitutional claim based on inadequate medical care.  Mr. Goldberg has been seen by medical professionals who have generally been responsive to his conditions to the extent possible while freely acknowledging that further procedures would be warranted were Mr. Goldberg not incarcerated.  At this time, Mr. Goldberg is only asking that the Court consider his medical issues as part of his history and characteristics in making its determination as to bond.  However, in the event Mr. Goldberg is not released and his conditions are not more actively addressed, he may soon need to seek more particularized relief from the Court regarding his health problems.

WHEREFORE, for the foregoing reasons, Defendant Ronald Goldberg respectfully requests that this Court conduct a *de novo* evidentiary hearing on this motion and order him released on bond, subject to the conditions listed above and any other conditions deemed appropriate by the Court.

Dated this 22nd day of October, 2012

By:   /s/Michael J. Butler, Esq.
Michael J. Butler, Esq.
100 S Spring Ave #210
Sioux Falls, SD 57104
Mike.butlerlaw@midconetwork.com

William P. Ziegelmueller
Stetler, Duffy & Rotert, Ltd.
10 S. LaSalle St., Ste. 2800
Chicago, IL 60603
(312) 338-0200
bziegel@sdrlegal.com

Peter J. Bendorf
Bendorf Law Firm, PLLC
625 S. Minnesota Ave., Suite 101
Sioux Falls, SD 57104
(605) 838-0826
pbendorf@msn.com

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Appeal of Detention Order was served upon counsel for the Government via electronic filing at her last known address as follows:

Connie.larson@usdoj.gov

Dated this 22nd day of October, 2012.

/s/Michael J. Butler, Esq.
Michael J. Butler, Esq.