UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD GOLDBERG,<br><br>Defendant. | 4:11-CR-40111-KES<br><br>ORDER DENYING MOTION FOR MEDICAL FURLOUGH [DOCKET NO. 133]<br><br>AND DENYING MOTION FOR QUALIFIED PROTECTIVE ORDER [DOCKET NO. 134] |

Defendant Ronald Goldberg is before the court on a 22-count indictment charging him with bank fraud, access device fraud, wire fraud and aggravated identity theft.  See Docket No. 94.  Currently pending before the court is Mr. Goldberg's motion seeking a medical furlough.  See Docket No. 133.

During the pendency of this case, Mr. Goldberg's serial requests for release on bond have been denied a total of four times, including one appeal to the district court.  See Docket No. 18, 32, 35, and 78.  Those decisions were premised on both the financial danger to the community posed by Mr. Goldberg and on the risk of flight he poses.  See e.g. Docket No. 18.  Factors the court considered in deciding to detain Mr. Goldberg include his lengthy criminal history, the fact that he is alleged to have continued to perpetrate his financial crimes from jail during pretrial detention in this case, the number of false representations Mr. Goldberg has made to various courts considering his residence, place of employment, and identity as well as the impetus to flee resulting from the fact that he faces a

maximum penalty in this case of up to 30 years' imprisonment.  Id.   Mr. Goldberg has asserted his poor health and the lack of adequate medical care in jail in at least one of his prior attempts to be released on bond.  See Docket No. 69.

In his current motion, Mr. Goldberg seeks release on a furlough so that he can be examined by his personal physician, Dr. Marc Rector, of Sioux Falls.  See Docket No. 133.  He alleges that he has received no medical attention during his 32-month pretrial detention in this matter for his eyes, heart, or his endocrine system.  Id.  He alleges that his health is approaching a critical level with elevated blood pressure and uncontrolled diabetes which he alleges has affected his eyesight and made it difficult for him to read documents so as to assist in his defense.  Id.

In addition to counsel's motion on Mr. Goldberg's behalf, Mr. Goldberg took it upon himself to submit an additional pleading to the court *pro se*.  See Docket No. 135.  He submitted a letter dated March 28, 2013, over a year and a half old, from Dr. M. Rector stating that Mr. Goldberg is Dr. Rector's patient, that Dr. Rector has not seen Mr. Goldberg since May 5, 2011, and that Mr. Goldberg has "many health concerns" which Dr. Rector needs to address in his office.  Id.  In response to Mr. Goldberg's motion, the government filed a motion seeking a qualified protective order pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") so that the government could obtain Mr. Goldberg's medical records.  See Docket No. 134.

Because no response from Mr. Goldberg was forthcoming on the government's motion, the court scheduled a hearing in this matter.  At that hearing, the court explained two obstacles to consideration of Mr. Goldberg's

motion: (1) the motion did not detail what efforts, if any, had been taken with the United States Marshals Service to attempt to address Mr. Goldberg's medical concerns; and (2) Mr. Goldberg had not supplied the court or the government with his medical records so that an assessment could be made of the nature of Mr. Goldberg's medical issues and their seriousness. At the hearing, Mr. Goldberg agreed to sign a HIPAA release in favor of the government. Thereafter, both parties made additional filings with the court.

In its pleadings, the government appends a number of medical records pertinent to Mr. Goldberg. See Docket No. 144-1, 144-2, 144-3, and 144-4. Those records indicate the following. First, the government contends that Dr. Rector, Mr. Goldberg's physician, is not a specialist, but rather is a family medicine practitioner. Dr. Rector does not specialize in optometry, ophthalmology, cardiology, or endocrinology. Thus, his qualifications are the same as Dr. Heisler who treats Mr. Goldberg in jail. See Docket No. 144 at p. 2.

The government also supplied a letter from Dr. Steven S. Wolf, Medical Director of the Prisoner Operations Division of the United States Marshals Service who reviewed Mr. Goldberg's medical records from the jail. See Docket No. 144-1. Dr. Wolf stated that one of the most reliable measures of overall diabetic control is the hemoglobin blood test. Id. The target range for this test is 7.0 or less. Id. Mr. Goldberg has not adhered to a proper diet for Type II diabetes, as documented by numerous commissary purchases (see Docket No. 144-2), and has refused to take his diabetes medicine regularly. See Docket No. 144-1. Despite these problems, all directly in Mr. Goldberg's control, his hemoglobin test is just off of the target at

7.4.  Id.   The Marshals Service planned another hemoglobin test for this month. Id.  One year ago his hemoglobin test was 6.1.  See Docket No. 144-3 at p. 12.

Dr. Wolf explained that the Marshals Service denied Mr. Goldberg's request for a referral to an endocrinologist for his diabetes, as the Marshals reserve such specialty referrals for cases where diabetic control is poor despite standard therapy and an appropriate diet.  See Docket No. 144-1.  If Mr. Goldberg began taking his medication regularly and adhering to an appropriate diet and still showed poor diabetic control, a referral would be considered.  Id.  Dr. Wolf explained that the Marshals Service routinely authorizes referrals for podiatry and eye exams to prevent diabetic complications.  Id.

In addition to Dr. Wolf's letter, the government obtained and reviewed Mr. Goldberg's medical records itself.  Those records confirm Dr. Wolf's observations.  Id. at 144-3, 144-4.  The records reveal that Dr. Heisler has attended Mr. Goldberg regularly for his chronic conditions, including his diabetes. Id.  At the July visit, Mr. Goldberg indicated he wanted to stop taking one of his medications, glyburide.[1]  Id.  He is or has been prescribed glyburide for his diabetes, losartan for high blood pressure and to reduce the risk of stroke, metformin another type of drug for diabetes, omeprazole for excess stomach acid and acid reflux disease, sivastatin for the reduction of blood cholesterol, and ventolin for the treatment or prevention of bronchospasm.  See Docket No. 144-3 at p. 2; see also www.drugs.com, last checked December 8, 2014.

In July, 2014, Mr. Goldberg received a comprehensive medical exam, including a chest x-ray.  See Docket No. 144-4 at p. 156.  That diagnostic device

---

[1] Glyburide is an oral drug used to control Type II diabetes.  See www.drugs.com, last checked December 8, 2014.

showed that his heart size is normal, his lungs were clear, and his mediastinal contours were within normal limits, resulting in the conclusion that he suffers from no acute cardiopulmonary process.  Id.

Jail records show that Mr. Goldberg often refused "accuchecks" which measure blood sugar level and that he often refuses to take his medications.  Id. Although Mr. Goldberg correctly indicates that his blood sugar was 423 on October 25, 2014, medical records indicate that jail staff contacted Dr. Heisler and instructions were given to give Mr. Goldberg medication and continue checking his blood sugar levels once per hour until they reached a specified level.  Id.  Jail staff was instructed to take Mr. Goldberg to the emergency room if he began to experience abdominal pains, vomiting, urinating a lot, or was dehydrated.  See Docket No. 144-3 at p. 10.  These conditions never manifested themselves.

The very next day Mr. Goldberg complained of losing the feeling in his left great toe and having swelling and aching in his feet.  Id. at p. 10-12.  His hips and knees were x-rayed.  Id.  The condition was associated with Mr. Goldberg's diabetes.  Id.  He was given acetaminophen at regular intervals for five days and told to report back if the symptoms persisted or got worse.  Id. at 12.  He did not return to sick call after the acetaminophen treatment.  Id.

Mr. Goldberg requested a visit with a podiatrist, and that request was approved and scheduled for an upcoming date.  He also requested a visit with an optometrist, which was granted and completed.  Although Mr. Goldberg alleges that his eyesight has gotten poor as a result of his poorly controlled diabetes, jail staff indicates that he reads the newspaper every day as part of his daily routine. In addition, jail medical records indicate that Mr. Goldberg saw a podiatrist for a

long toenail on August 15, 2014; saw a doctor for a cold on September 9 and 24, 2014; and was seen and treated for a toothache on March 13, 2014. See Docket No. 144-3.

In his supplemental pleading, Mr. Goldberg asserts that he has had consistently high glucose numbers for the 32 months he's been in custody. See Docket No. 145. Mr. Goldberg does not cite to any records in support of this assertion. The court is aware from its own review of Mr. Goldberg's records that a year ago his blood glucose level was at 6.1, below the target of 7.0. See Docket No. 144-3 at p. 12.

He also asserts that he has been prescribed oral diabetes medication, but has not been given insulin (injections). See Docket No. 145. Again, Mr. Goldberg does not supply the court with documentation in support of his assertion, but the court's own review of the medical records appears to bear out this assertion. Mr. Goldberg has been prescribed glyburide and metformin, both oral diabetes medications.

Mr. Goldberg gives the court no medical opinion or other data to rely upon from which the court could conclude that insulin injections constitute appropriate medical care for Mr. Goldberg given his current circumstances, especially given his poor compliance with diet and medication. The court is not qualified to conclude on the basis of its own knowledge that Mr. Goldberg should be receiving insulin injections.

Mr. Goldberg also alleges that his blood pressure is elevated at 140/94 and that he is not receiving blood pressure medication. See Docket No. 145. However, the court's review of Mr. Goldberg's records indicate that he is receiving losartan,

which is a medication for high blood pressure.  See Docket No. 144-3 at p. 4. Without supplying any contradictory evidence, the court cannot conclude that Mr. Goldberg is failing to receive blood pressure medication.  In this regard, Mr. Goldberg asserts that his blood pressure two weeks ago was 140/94.  See Docket No. 145.  This is certainly lower than it has been at other times, as a reading of 144/98 was recorded in July, 2014.  See Docket No. 144-3 at p. 12.  Furthermore, consultation of a standard blood pressure chart shows that 120/80 is ideal, and 140/90 is considered pre-high blood pressure.  See www.bloodpressureuk.org/BloodPressure and you/Thebasics/Bloodpressurechart, last checked Dec. 8, 2014.  Again, without Mr. Goldberg supplying the court with medical evidence, the court cannot conclude that a blood pressure reading of 140/94, in conjunction with receiving medication, is such that the court can conclude that Mr. Goldberg must be released from jail in order to receive medical treatment.

   In conclusion, the court can see that Mr. Goldberg suffers from a number of chronic conditions which he appears to have had for some time (his jail records indicate he has suffered Type II diabetes since age 50, six years ago).  These conditions include diabetes, high blood pressure, obesity, and asthma or chronic respiratory problems.  Diabetes can affect one's extremities and eye sight.  But, given the medical records from the jail, Mr. Goldberg has failed to establish that he is not receiving appropriate medical treatment for his conditions at the jail.  In particular, he has had a number of x-rays, he has seen a podiatrist on several occasions, he recently saw or will see an ophthalmologist, and he has been prescribed medications appropriate to his conditions.

Based on the foregoing, it is hereby

ORDERED that defendant Ronald Goldberg's motion for a medical furlough [Docket No. 133] is denied. It is further

ORDERED that the government's motion for a protective order [Docket No. 134] is denied as moot.

DATED this 8th day of December, 2014.

BY THE COURT:

*/s/ Veronica L. Duffy*
_____
VERONICA L. DUFFY
United States Magistrate Judge
